# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

PAUL JEROD LESTER,

     Petitioner,    :  Case No. 2:21-cv-5132

  - vs -         District Judge James L. Graham
            Magistrate Judge Michael R. Merz

JAY FORSHEY, Warden,

            :

     Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case under 28 U.S.C. § 2254, brought by Petitioner Paul Lester with the assistance of counsel to obtain relief from his convictions in the Union County Court of Common Pleas (Petition, ECF No. 1). After extended litigation over the sufficiency of the Petition, District Judge Graham ordered Respondent to file a return and allowed the Petitioner time to file a reply (ECF No. 15). Each party has complied (Return, ECF No. 16; Traverse, ECF No. 17). Respondent had filed the State Court Record early in the case (ECF No. 6) and completed the record by filing transcripts with the Return. The case is therefore ripe for decision.

The Magistrate Judge reference was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 18).

1

**Litigation History**

On March 1, 2018, a Union County grand jury indicted Lester on charges of Trafficking in Heroin, Trafficking in Cocaine, and Aggravated Trafficking in Drugs, each in violation of Ohio Revised Code § 2925.03(A)(1); Possession of Cocaine and Aggravated Possession of Drugs, both in violation of Ohio Revised Code § 2925.11(A); Illegal Manufacture of Drugs in violation of Ohio Revised Code § 2925.04(A); Having Weapons Under Disability, in violation of Ohio Revised Code § 2923.13(A)(3); and Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), all arising from conduct during the approximate period of December 1, 2017, through January 11, 2018 (Indictment, Case No.18-CR-012, State Court Record, ECF No. 6, Ex. 1).

A second indictment, handed down March 19, 2018, charged Lester in case number 18 CR 0061, with one count of Trafficking in Heroin, in violation of Ohio Revised Code § 2925.03(A)(1); one count of Trafficking in Cocaine, in violation of Ohio Revised Code § 2925.03(A)(2); one count of Possession of Cocaine, in violation of Ohio Revised Code § 2925.11(A); and one count of Tampering with Evidence, in violation of Ohio Revised Code § 2921.12(A)(1), all for conduct occurring on August 17, 2017.

After joinder of the cases, to which Lester objected, they were tried to a jury which found him guilty on all counts on November 2, 2018; he was sentenced to an aggregate term of thirty years imprisonment. Lester appealed both cases to the Ohio Court of Appeals for the Third District, which consolidated the appeals *sua sponte* and affirmed. *State v. Lester*, 2020-Ohio-2988, ¶ 8 (Ohio App. 3rd Dist. May 18, 2020). The Supreme Court of Ohio declined to exercise jurisdiction over a further appeal. *State v. Lester*, 159 Ohio St.3d 1489 (2020).

Lester filed the instant Petition for Writ of Habeas Corpus on October 27, 2021, pleading the following grounds for relief:

2

**Ground One**: Rights to due process and effective representation of counsel are violated where trial counsel fails to properly object to the improper joinder of two unrelated [sic] and prejudicial indictments.

**Supporting Facts[1]:** Mr. Lester's . . . first claim stems from his trial counsel's failure to render effective assistance of counsel in objecting to the improper and prejudicial joinder of two unrelated indictments. Those indictments sowed confusion, which was laid bare by questions asked by the jury. The goal of judicial efficiency was not served by the joinder, which resulted in palpable prejudice to Mr. Lester. As such, his trial counsel was ineffective for failing to properly object thereto.

**Ground Two:** The rights to due process and confrontation are violated where irrelevant, unnoticed evidence is admitted with the intention to prejudice the jury.

**Supporting Facts:** Mr. Lester's second claim is raised as a result of due process and confrontation clause violations where the prosecution repeatedly introduced irrelevant and unnoticed evidence with the intention of prejudicing the jury. The evidence involved the bad acts of others as well as unindicted, unsubstantiated, and irrelevant alleged acts of Mr. Lester. The inclusion of this "evidence" resulted in a violation of Mr. Lester's constitutionally guaranteed rights.

**Ground Three:** Prosecutorial misconduct resulted in a violation of Petitioner's due process rights.

**Supporting Facts:** Mr. Lester's third claim arises from the prosecution's unfettered misconduct, which permeated the entire trial. In addition to the improper "evidence" the prosecution introduced, noted in the second claim, the prosecution also elicited a wide array of improper testimony, made improper comments regarding the credibility of witnesses and Mr. Lester, made improper emotional appeals to the jury, improperly threatened and impeached a witness, and more. The continuous misconduct was designed to inflame the fears and passions of the jury and was wholly irrelevant to the indicted conduct. The inclusion of this evidence rendered the trial so fundamentally unfair that the jury's verdict cannot be considered reliable.

(Petition, ECF No. 1).

---

[1] The three sets of supporting facts are not pleaded in the Petition, but in the attached memorandum in support, ECF No. 1-1, PageID 19.

3

Respondent moved to dismiss for failure to comply with habeas pleading rules (ECF No. 7).  Magistrate Judge Deavers rejected that argument and Judge Graham adopted her Report to that effect (ECF Nos. 12, 14).  On the Court's further order, Respondent has filed a Return (ECF No. 16) and Petitioner has filed a Traverse (ECF No. 17), rendering the case ripe for decision.

# Analysis

## Ground One: Due Process and Ineffective Assistance

## Due Process – Improper Joinder

In his First Ground for Relief, Lester asserts he was denied due process of law when his two cases were tried jointly and that he received ineffective assistance of trial counsel when his trial attorney failed to properly object to the joinder.

Respondent asserts that the due process portion of this claim was not fairly presented to the state courts and is therefore procedurally defaulted.  Furthermore, he asserts the ineffective assistance of trial counsel claim is without merit.

In the Traverse, Petitioner apparently limits his First Ground for Relief to his ineffective assistance of trial counsel claim (ECF No. 17, PageID 1350).  However, he then discusses procedural default law generally, treating *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), as providing the governing standard, but then makes no attempt to apply *Maupin* to this case.  *Id.* at PageID 1352-54.

Lester claims he raised his First Ground for Relief as his Fifth Assignment of Error on direct appeal "in conjunction with the error he raised in his first Assignment of Error, which related

to the improper joinder of indictments." As reported by the Court of Appeals, the relevant assignments of error were: Assignment of Error No. I: The trial court committed reversible error in granting the state's motion to join the two indictments. Assignment of Error No. V: Defense counsel's failure to renew his motion as to the improper joinder of the two indictments and failure to stipulate to defendant's prior conviction in a timely fashion or bifurcate the count, rendered counsel's performance deficient to the point of being ineffective. *State v. Lester*, 2020-Ohio-2988, ¶ 8 (Ohio App. 3rd Dist. May 18, 2020).

The Third District decided Lester's First Assignment of Error as follows:

> {¶29} In his first assignment of error, Lester argues that the trial court erred in denying Lester's-motion-to sever his cases for trial. Specifically, Lester argues that the trial court should have ordered separate trials because the facts of each case were not separate and distinct and would be confusing to the jury.

> *Standard of Review*

> {¶30} "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992), citing *State v. Torres*, 66 Ohio St.2d 340, 343 (1981) and 2 LaFave & Israel, Criminal Procedure, Section 17.1, at 354-355 (1984). *See also State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 169 (establishing that it is well settled that the law favors joinder). Notwithstanding this notion that joinder is favored, "[i]f it appears that a defendant or the state is prejudiced * * * by such joinder for trial together of indictments * * *, the [trial] court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14.

> To prevail on a claim of prejudicial joinder, the defendant must affirmatively demonstrate that (1) his rights were prejudiced by the failure to sever, (2) he provided the trial court with sufficient information to allow it to weigh the benefits of joinder against the defendant's right to a fair trial, and (3) the trial court abused its discretion by refusing to sever the charges for trial. *State v. Jeffries*, 1st Dist. Hamilton No. 2018-Ohio-2160, ¶ 57, citing *Schaim* at 59, citing *Torres*, syllabus. *See State v. Howard*, 3d Dist. Marion No. 9-

5

10-50, 2011-Ohio-3524, ¶ 82, citing *Schaim* at 59, citing *Torres*, syllabus.

{¶31} Generally, we review a trial court's decision on a motion to sever under Crim.R. 14 for an abuse of discretion. *State v. Kelly*, 5th Dist. Delaware No. 17CAA040023, 2018-Ohio-378, ¶ 64, citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 166, citing *Torres*, 66 Ohio St.2d at 343. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶32} Importantly, Lester failed to renew his motion for severance at the close of the State's case or at the close of all evidence. (Nov. 1, 2018 Tr., Vol. III, Tr. at 394). Consequently, Lester has waived all but plain error on appeal, and to us Lester cannot demonstrate plain error in his argument. "However, a defendant's failure to renew his or her Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence waives all but plain error on appeal." *Howard* at ¶ 82, citing *State v. Miller*, 105 Ohio App.3d 679, 691 (4th Dist.1995). *See also State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 34; *Kelly* at ¶ 63. "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *Howard* at ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58, 63. "We recognize plain error ' "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." ' " *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶33} Here, the evidence in the record of each indicted case is simple and distinct, involving drug-related activities of certain drugs on particular days at particular locations. *Compare State v. Thomas*, 3d Dist. Allen Nos. 1-11-25 and 1-11-26, 2012-Ohio-5577, ¶ 23 (concluding that the trial court did not err by denying Thomas's motion to sever because, in part, "the evidence of each crime in each indictment was simple and distinct, involving controlled drug buys of certain amounts of crack cocaine on certain days, drug possessions of certain amounts on certain days, and weapons possessions of certain weapons on certain days"). Further, the

evidence in the record is direct and uncomplicated and, as we concluded in Lester's eighth assignment of error, was sufficient to sustain the verdicts of guilty by the jury. *See Torres*, 66 Ohio St.2d at 344 ("The evidence in the instant case, however, not only was direct and uncomplicated as to each indictment, but it also was amply sufficient to sustain each verdict, whether or not the indictments were tried together.").

{¶34} Moreover, the record reveals that the trial court instructed the jury that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately." (Nov. 2, 2018 Tr. at 95-96). *Compare Thomas* at ¶ 24. *See Torres* at 343, citing *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980), ("We find no merit in this claim because the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated.").[4] Thus, for these reasons, Lester has failed to demonstrate that there was an obvious defect in the proceedings or that the outcome of his trial would have been different.

{¶35} Accordingly, the trial court did not commit any error, let alone plain error, by denying Lester's motion to sever and Lester's first assignment of error is overruled.

*State v. Lester*, 2020-Ohio-2988, ¶ 8, (3rd Dist. May 18, 2020).

The Magistrate Judge concludes the first branch of Lester's Ground One is procedurally defaulted. The Third District reviewed the improper joinder claim for plain error because his attorney had not renewed the motion to sever at either the close of the State's case or the close of all the evidence. Ohio has a relevant procedural rule requiring renewal of a pre-trial motion to sever at those two points in the proceedings. That rule is attested by citation in the Third District's decision. See *Lester*, ¶ 32, *supra*. Lester also concedes its existence in his Traverse. (ECF No. 17 PageID 1355). It enforced this rule against Lester by reviewing his joinder claim only for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431

F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001). The rule satisfies the third prong of *Maupin* in much the same way as the contemporaneous objection rule – by putting the asserted error before the trial court before it becomes locked into the appellate record.

A procedural default can be cured by a showing of cause and prejudice. In the second part of his First Ground for Relief, Lester argues the failure of his trial attorney to renew the objections constitutes ineffective assistance of trial counsel. While ineffective assistance of trial counsel can constitute excusing cause, the Magistrate Judge concludes that claim, made as the second part of Lester's First Ground for Relief, is without merit for reasons given below.

Merits review of the due process – improper joinder portion of Lester's First Ground for Relief is barred by Lester's procedural default of the claim and it should be dismissed on that basis[2].

**Ineffective Assistance of Trial Counsel**

In the second portion of his First Ground for Relief, Lester claims he received ineffective assistance of trial counsel when his attorney failed to renew his objections to joinder at the two required times. The Third District decided this claim on the merits, holding:

> {¶59} In his fifth assignment of error, Lester argues that his trial counsel was deficient in his performance by failing to renew his motion against joinder (of the two indictments), by failing to stipulate to Lester's prior conviction timely, and by failing to seek to bifurcate Count Seven. For the reasons that follow, we disagree.
>
> *Standard of Review*
>
> {¶60} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient

---

[2] Respondent also notes that Lester's appeal to the Ohio Supreme Court did not include an ineffective assistance of trial counsel claim, thus constituting a further procedural default. *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999).

performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show trial counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. "[T]rial Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, *Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶61} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶62} Lester's ineffective-assistance-of-counsel claim centers on his trial counsel's failure to renew his motion against joinder of the two indictments and by failing to timely stipulate to Lester's prior conviction or, alternatively, to bifurcate Count Seven.

*Joinder of Indictments*

{¶63} As to his ineffective assistance of counsel argument, Lester first argues that his trial counsel was ineffective because trial counsel failed to renew his motion against joinder. The record reflects that Lester's counsel filed a pretrial motion seeking to have the Raymond-residence indictment tried separately from the Marysville-hotel indictment, which the State opposed. (Case No. 2018-CR-0012, Doc. Nos. 36, 66); (Case No. 2018-CR-0061, Doc. Nos. 26, 45). The trial court denied Lester's motion, and Lester's counsel failed to renew the request during trial. (Case No. 2018-CR-0012, Doc. No. 101); (Case No. 2018-CR-0061, Doc. No. 61).

Lester argues that his counsel's failure to renew the motion resulted in the waiver of all but plain error below.

{¶64} Even if we assume, without deciding, that Lester satisfied the first prong of *Strickland*, Lester cannot satisfy the second prong. As discussed in Lester's first assignment of error, the stated evidence against him in each indictment was simple, distinct, direct, and uncomplicated.

> The law favors the joinder * * * and the avoidance of multiple trials because joinder conserves judicial and prosecutorial time, lessens the expenses of multiple trials, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results from successive trials before different juries.

*State v. Luckie*, 5th Dist. Richland No. 2018-Ohio-594, ¶ 30, citing *State v. Thomas*, 61 Ohio St.2d 223, 225 (1980). Importantly, and dispositive to this argument, Lester cannot demonstrate prejudice as a result of his trial counsel's failure to renew his motion against joinder of the indictments in light of the trial court's instruction (to the jury) to consider each count in the indictments, separately. (Nov. 2, 2018 Tr. at 95-96). Accordingly, Lester is unable to satisfy the second prong of *Strickland*.

*State v. Lester, supra.*

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

10

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright,* 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011);

11

*Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Third District decided Lester's ineffective assistance of trial counsel claim on the merits[3], applying the correct governing standard from Strickland.  Lester has not shown that that court's application of *Strickland* was objectively unreasonable and it is therefore entitled to deference under 28 U.S.C. § 2254(d)(1).  The second portion of Lester's First Ground for Relief should therefore be dismissed with prejudice on the merits.


**Ground Two:  Violation of the Due Process and Confrontation Clauses**


In his Second Ground for Relief, Lester claims his rights under the Due Process and Confrontation Clauses were violated when the State introduced "irrelevant, unnoticed" evidence including the bad acts of other persons and "unindicted, unsubstantiated, and irrelevant alleged acts of Mr. Lester."

It appears to the Magistrate Judge that the relevant assignments of error on appeal are Assignments II and III which read:

> Assignment of Error No. II
>
> The trial court erred in permitting the state to introduce evidence pursuant to Evid.R. 404(B) that was not relevant and whose prejudicial value substantially outweighed any probative value.
>
> Assignment of Error No. III
>
> The trial court erred in permitting the state to introduce prejudicial evidence of bad acts committed by other individuals, depriving defendant of substantial constitutional rights.

---

[3] The Third District assumed deficient performance and decided the case on the prejudice prong.

*State v. Lester, supra*.

The Third District decided these two Assignments of Error together. Judge Zimmerman's opinion reads:

{¶36} In Lester's second assignment of error, he argues that the State offered testimony related to "other acts" evidence outside the relevant-time frames set forth in the indictments which were irrelevant and unfairly prejudicial under *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695. Moreover, Lester argues in his second assignment of error that the State did not provide him with sufficient notice that it intended to use the "other acts" evidence at trial. In his third assignment of error, Lester argues that the trial court permitted the State to introduce evidence of bad acts committed by witnesses which infringed on his constitutional rights.

*Standard of Review*

{¶37} " 'Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith.' " *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21, quoting *State v. Hawthorne*, 7th Dist. Columbiana No. 04 CO 56, 2005-Ohio-6779, ¶ 24, citing *State v. Elliott*, 91 Ohio App.3d 763, 770 (3d Dist.1993) and Evid.R. 404. " 'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ' " *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. " 'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.' " *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

{¶38} Evidence of other acts is generally admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character; it is relevant when offered for that purpose; and the danger of unfair prejudice does not substantially outweigh its probative value. *State v. Kirkland*, 140

13

Ohio St.3d 73, 2014-Ohio-1966, ¶ 68, citing *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 20 and Evid.R. 401, 403, and 404(B). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Under Evid.R. 403(A), '[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 122, quoting *State v. Maag*, 3d Dist. Hancock Nos. 5-03-32 and 5-03-33, 2005-Ohio-3761, ¶ 71. " 'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.' " *Id.*, quoting *State v. Calhoun*, 11th Dist. Ashtabula No. 2010-A-0057, 2012-Ohio-1128, ¶ 82.

{¶39} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157. However, "if the party wishing to exclude evidence fails to contemporaneously object at trial when the evidence is presented, that party waives for appeal all but plain error." *Bagley* at ¶ 53-54, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59-60, *State v. Barrett*, 4th Dist. Scioto Nos. 03CA2889, 2004-Ohio-2064, ¶ 20, and *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 19.

{¶40} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley* at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-1414, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

***"Other-acts" analysis***

{¶41} Initially, we must first determine whether Lester preserved this issue (under his second and third assignments of error) on

14

appeal. Lester's arguments center around the testimonies of Jason Maynard ("Maynard"), Samantha Righter ("Righter"), Cassidy Manns ("Manns"), Alyssa Carver ("Carver"), Todd Frye ("Frye"), Kaylee Earles ("Earles"), Timothy Holton ("Holton"), and Matthew Wright ("Wright"). We note, that Lester objected to the testimonies of Maynard, Righter, and Manns, as to relevance. (Oct. 30, 2018 Tr., Vol. I, at 78-79, 127-132, 136-140). Further, Lester objected to the testimony of Carver on the basis that her testimony was inadmissible under Evid.R. 404(B). (Oct. 31, 2018 Tr., Vol. II, at 177). However, Lester failed to object to the testimonies of Frye, Earles, Holton, and Wright. (Oct. 30, 2018 Tr., Vol. II, at 198, 210); (Oct. 31, 2018 Tr., Vol. II, at 200-201); (Nov. 1, 2018 Tr., Vol. I, at 98); (Nov. 1, 2018 Tr., Vol. II, at 188). And, based on our review of the record, we cannot conclude that the admission of the testimonies of Frye, Earles, Holton, and Wright amounted to plain error. As such, we will only address whether the testimonies of Maynard, Righter, Manns, and Carver are subject to Lester's assignments of error.

*Maynard's, Righter's, Manns's, and Carver's Testimony*

{¶42} Lester contends that Maynard, Righter, Manns and Carver were permitted to testify to "other acts" that occurred outside of the indicted-time frames. Because Lester argues that the facts before us involve "other acts" evidence under Evid.R. 404(B), we apply the three-step analysis set forth in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 19-20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id.* "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, citing Evid.R. 403.

*Maynard's Testimony:*

{¶43} In the State's case in chief during its direct examination of Maynard, the following exchange occurred to which Lester's counsel objected:

> [State of Ohio]: Okay. What's the farthest you ever drove to make a delivery?

[Maynard]: I mean, all around Columbus. All around Delaware and, I mean --

[Lester's Trial Counsel]: I'm going to object as to relevancy, Your Honor.

[State of Ohio]: I'm trying to determine, Your Honor, how far he drove that night. It occurred repeatedly, so I'm trying to figure out how far he drove.

[The Trial Court]: Then ask him how far he drove that night.

[State of Ohio]: So, how far did you drive on August 17, 2017?

[Maynard]: That--I-- can't answer that because I don't remember exactly at that time. After that happened, just like today, I could not tell you who I went to that day. Who I went to that night. I mean, I don't -- I can't recall where I went that day.

(Oct. 30, 2018 Tr., Vol. I, at 78). After the objection, the trial court ordered the State to rephrase the question. Thereafter, no further objection by Lester's trial counsel occurred. Since Lester's trial counsel's failed to object to the rephrased question, and under the facts presented, we apply plain error. *See* Crim.R. 52(B). Assuming, arguendo, that the State's question was an attempt to elicit "[e]vidence of [Lester's] other crimes, wrongs, or acts" outside of the indicted-time frames and in different jurisdictions which would be inadmissible "to show action in conformity therewith", Maynard's response was limited to the State's rephrased question which confined Maynard's answer to acts related to the indicted-time frame for the Marysville-hotel case. Evid.R. 404(A). (*See* Oct. 30, 2018 Tr., Vol. I, at 78). Here, the State's rephrased question related directly to Counts One and Two. (Case No. 2018-CR-0061, Doc. No. 1). And, under the facts before us, the admission of this evidence does not implicate Evid.R. 404(B). *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 73, (concluding that Evid.R. 404(B) is "not implicated "in situations where the act is related to the crime or has a connection to the offense."). Evid.R. 404(B) applies to the admission of "other acts" extrinsic to the charged offense and not those acts intrinsic to the offense because they are outside the purview of Evid.R. 404(B). *State v. Hill*, 5th Dist. Stark No. 2018CA00077, 2019-Ohio-3432, ¶ 51-52, citing *Jordan v. Dayton Testing Lab.*, 2d Dist. Montgomery No. 19741, 2004-Ohio-2425, ¶ 48 and *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008). Accordingly, as to Maynard's testimony, Lester's argument lacks merit.

*Righter's Testimony:*

16

{¶44} Turning to Righter's testimony, the record reveals that Righter testified that she had known Lester since she was a teenager and reconnected with him in the summer of 2017 because "[she] was getting high and a friend informed [her] that [Lester] was selling dope." (Oct. 30, 2018 Tr., Vol. I, at 127). When she did not have money, she testified that she exchanged sexual favors for drugs. (*Id.* at 128). Although Lester's trial counsel objected to this line of questioning, he did so on the on the basis of relevance and not impermissible character evidence under Evid.R. 404(B). (*Id.*). The trial court overruled his objection and instructed the State to tie the dates up to the indictment. (*Id.*). Thereafter, Righter testified that she had also purchased drugs from Lester during the relevant-indicted-time frames in the basement of the Raymond residence utilizing the same forms of payment. (*Id.* at 128-129). *See* Evid.R. 103(A)(1). " 'Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected,' and '[i]n case the ruling is one admitting evidence, a timely objection appears in the record stating the specific ground of the objection, if the specific ground was not apparent from the context.' " *Stark v. Stark*, 5th Dist. Delaware No. 01CAF6020, 2002 WL 109281, *3 (Jan. 4, 2002), quoting Evid.R. 103(A)(1). Notwithstanding the prescription of Evid.R. 103(A)(1) requiring a timely objection stating the specific ground of the objection, even if we assume without deciding that an abuse-of-discretion standard applies to the evidence Lester is challenging on appeal, the result is still the same. *See State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 10 ("We will assume without deciding that an abuse-of-discretion standard of review applies as to Rebecca's testimony, even though Wendel objected to only one of the statements."); *Stark* at *3 ("Although appellant did not specifically state hearsay as the reason for the objection, the court did not abuse its discretion in admitting the evidence.").

{¶45} Importantly, Lester was indicted for trafficking offenses which were alleged to have occurred on August 17, 2017 (arguably "summer of 2017") in Counts One and Two relating to the Marysville-hotel case, and after Lester's objection, Righter's testimony was confined to acts that occurred during the relevant-indicted-time frames in the Raymond-residence case. (Case No. 2018-CR-0061, Doc. No. 1); (Case No. 2018-CR-0012, Doc. No. 2); (Oct. 30, 2018 Tr., Vol. I, at 12). Because we have determined that the Righter's testimony relates to acts intrinsic to the indicted offenses, we conclude Lester's argument is without merit. *See Carter*, 2017-Ohio-1233, at ¶ 73; *Hill*, 2019-Ohio-3432, at ¶ 51.

*Manns's Testimony:*

{¶46} We now address Manns's objected to testimony related to the facts of the Marysville-hotel case. The testimony in question is as follows:

> [State of Ohio]: Miss Manns, how long had you been purchasing from Jerod Lester?
> [Lester's Trial Counsel]: Your Honor, I'm going to object as to relevancy.
> [The Trial Court]: Overruled.
> [Lester's Trial Counsel]: Miss Manns, the question pending was, how -- how long had you been purchasing from Jerod Lester?
> [Manns]: I'm not sure.
> [State of Ohio]: Does it go back more than a year prior to - -
> [Manns]: No.
> [State of Ohio]: Let me finish my question. Does it go back more than a year prior to August 17, 2017?
> [Manns]: No.
> [State of Ohio]: Did you ever visit Mr. Lester at the address of 21378 Raymond, Ohio -- I'm sorry, 21378 Titus Road, Raymond, Ohio to purchase drugs?
> [Manns]: Nope.

(Oct. 30, 2018 Tr., Vol. II, at 198). The State was attempting to elicit testimony that Manns had previously purchased drugs from Lester at the Raymond residence (present conduct at issue in the trial). *See Carter* at ¶ 73; *Hill* at ¶ 51. However, Manns's testimony revealed that she had not previously purchased drugs from Lester at the Raymond residence. Even though the question posed to Manns by the State may have involved unindicted-time frames, there is no material prejudice to Lester, given, her response. *See State v. Jones*, 3d Dist. Logan No., 8-16-18, 2017-Ohio-4351, ¶ 10, quoting *State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, at ¶ 24, citing *Issa*, 93 Ohio St.3d at 64. Thus, the trial court did not abuse its discretion by overruling the objection. Lester's argument is without merit.

*Carver's Testimony:*

{¶47} Next, we turn to Carver's testimony. Carver testified to selling drugs for Lester before and during the course of the indicted-time frames at the Raymond residence. (Oct. 31, 2018 Tr., Vol. II, at 176-178). Lester's trial counsel objected to this evidence pursuant to

Evid.R. 404(B) and requested the trial court to strike the testimony, and to instruct the jury to disregard it. (*Id.* at 177). The trial court sustained Lester's objection, but denied the request to strike, and instead gave the jury a limiting instruction. (*Id.* at 177-178). Consequently, we limit our analysis to those extrinsic acts (acts prior to indicted-time frames) within the purview of Evid.R. 404(B). So, if we assume without deciding that Carver's testimony meets the first two steps of the *Williams* analysis, we still cannot conclude that Carver's testimony (that she sold drugs prior to the indicted-time frame for Lester) 'is [ ] [unfairly] prejudicial "because the trial court instructed the jury that this evidence could not be considered to show that [Lester] acted in conformity with a character trait." ' " *Jones*, 2017-Ohio-4351, at ¶ 13, quoting *Wendel*, 2016-Ohio-7915, at ¶ 28, quoting *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 24, (concluding "[t]he trial court's limiting instruction lessened any prejudicial effect of the evidence"). (*See* Oct. 31, 2018 Tr., Vol. II, at 176-178). Thus, any prejudicial effect did not substantially outweigh the probative value of the evidence. *See State v. Regan*, 5th Dist. Delaware No. 13 CAA 08 0067, 2014-Ohio-3797, at ¶ 19. *See also Wendel* at ¶ 28, citing *Williams* at ¶ 24.

*Evid.R. 404(B) Notice Requirement Analysis*

*12 {¶48} Next, we will address Lester's argument concerning whether he was provided reasonable notice in advance of trial of the State's intention to introduce "other-acts" evidence at trial under Evid.R. 404. "Evid.R. 404 was amended in 2012 to adopt a notice requirement." *State v. Nuzum*, 6th Dist. Lucas No. L-15-1122, 2016-Ohio-2744, ¶ 20. As a result of the amendment, "[t]he proponent of other-acts evidence must provide 'reasonable notice in advance of trial' of the general nature of any such evidence it intends to introduce at trial." *State v. Yoder*, 5th Dist. Licking No. 16-CA-54, 2017-Ohio-903, ¶ 24, quoting Evid.R. 404(B). " '[T]he notice given to the defense regarding "other crimes" evidence must be sufficiently clear so as "to permit pretrial resolution of the issue of its admissibility." ' " *Id.*, quoting *State v. Tran*, 8th Dist. Cuyahoga No. 100057, 2014-Ohio-1829, ¶ 23, quoting *United States v. Long*, 814 F.Supp. 72, 74 (D. Kan. 1993). "Following its amendment, the Ohio rule is now similar to the federal rule, which requires reasonable notice of the general nature of any such evidence in order to prevent unfair surprise." *Nuzum* at ¶ 20, citing *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶ 12, (citation omitted). " 'Whether notice is "reasonable" will depend on the facts and circumstances of each case.' " *Yoder* at ¶ 24, quoting *Plevyak* at ¶ 19, (citation omitted). Evid.R. 404(B)'s notice requirement "should not be construed to exclude otherwise relevant

19

and admissible evidence solely because of a lack of notice, absent a showing of bad faith." 2012 Staff Note, Evid.R. 404.

{¶49} We note that, unlike other rules of evidence, the plain language of Evid.R. 404(B) requires that the defendant receive "reasonable notice in advance of trial", not written notice of the general nature of "other acts" evidence the State intends to introduce at trial. Evid.R. 404(B). *Compare* Evid.R. 609(B) (requiring "sufficient advance written notice of intent to use" a conviction more than ten-years-old to impeach a witness).

{¶50} Given the specific facts and circumstances of this case, the record supports that Lester was given "reasonable notice in advance of trial" by the State of its intention to use "other-acts" evidence at trial by virtue of its memorandums filed on August 21, 2018. (Case No. 2018-CR-0012, Doc. No. 66); (Case No. 2018-CR-0061, Doc. No. 45). *See Jones*, 2017-Ohio-4351, at ¶ 16; *Plevyak*, 2014-Ohio-2889, at ¶ 20, 22. *See also State v. Heiney*, 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 66; *In re. T.N.*, 3d Dist. Marion No. 9-15-36, 2016-Ohio-5774, ¶ 73.

{¶51} Nevertheless, Lester's trial counsel objected to the State's "other-acts" evidence on the first day of trial, after the jury had been selected, and before the parties gave their opening statements. (Oct. 29, 2018 Tr., Vol. I, at 98). Thus, we conclude that Lester's counsel had *actual notice* that the State's evidence contained "other-acts" evidence under Evid.R. 404(B) and R.C. 2945.59 prior to trial. Consequently, we cannot say that Lester was unfairly surprised by the State's use of the "other-acts" evidence because he had notice of the State's intent to use it.

{¶52} Accordingly, we cannot conclude that the trial court abused its discretion by admitting the testimonies of Righter, Manns, and Carver or that the testimonies of Maynard, Frye, Earles, Holton, and Wright amounted to plain error under the facts presented in the record.

*"Bad acts" of witnesses analysis*

{¶53} Next, Lester argues that the State (in its case in chief) was not permitted to offer evidence regarding a witness' own criminal conduct (injecting themselves and others with drugs) "as a testament to [Lester's] bad character." (Appellant's Brief at 11). *See* Evid.R. 404, 607, 611, 614. Indeed

20

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
> * * *
> Evidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609.

Evid.R. 404(A) and (A)(3). *Compare* Evid.R. 404(A)(1), (2), 405(B).

{¶54} In our review of the record, we note that Lester objected to the testimonies of Detective Nathan Stone ("Det. Stone"), Righter, and Carver on the basis of relevancy. (Oct. 30, 2018 Tr., Vol. I, at 160). (Oct. 31, 2018 Tr., Vol. II, 170-172). (Nov. 1, 2018 Tr., Vol. II, at 290-299). However, Lester did not object to the testimonies of Czarnecki or Holton. Therefore, we will only review Lester's arguments as to the testimonies of Det. Stone, Righter, and Carver under an abuse-of-discretion standard. We will review the testimonies of Czarnecki and Holton under plain error. Nevertheless, regardless of the standard or the rule we apply, for the following reasons the outcome is the same.

{¶55} Lester argues that he was prejudiced by the State's discreditation of its own witnesses on direct examination with evidence of the witnesses "bad acts". We disagree. In our review of the record, we conclude that the State was not attempting to impeach its own witnesses, but was rather having each witness testify to the events portrayed in Lester's surveillance video, from the Raymond residence, which was offered as evidence by the State. *See* Evid.R. 104(A), (B); 901(A), (B)(1). The testimonies of Det. Stone, Righter, Carver, Czarnecki, and Holton laid a foundation for and assisted with the authentication of State's Exhibit 65 (a portable-hard drive), and it created a timeline for the events depicted therein. We conclude that Righter, Carver, Czarnecki, and Holton were not testifying to inadmissible-character evidence under Evid.R. 404(A)(3) as Lester argues, but were only identifying their activities depicted in the surveillance video.[5] Det. Stone, on the other hand, was testifying to his knowledge as it pertains to the contents of the video related to his investigation. *See* Evid.R. 602, 901(B)(1). *State v. Koch*, 2d Dist. Montgomery No. 28041, 2019-Ohio-4182, ¶ 51, citing *State v. Groce*, 10th Dist. Franklin No. 18-AP-51, 2019-Ohio-1007, ¶ 46, (holding that a witness who experienced the incident depicted in the video and a detective who reviewed the video as part of his investigation were both permitted to testify regarding the

contents of the surveillance video under Evid.R. 602). *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 116, citing Evid.R. 901(B)(1) (stating "testimony of a witness with knowledge is valid authentication").

{¶56} Moreover, each witnesses' testimony was a narrative of the events depicted in the surveillance video and provided context for the jury as to these events. *Koch* at ¶ 53, citing *State v. Walker*, 10th Dist. Franklin No. 17-AP-588, 2019-Ohio-1458, ¶ 64 and *State v. Coots*, 2d Dist. Miami No. 2014 CA 1, 2015-Ohio-126, ¶ 24, (reasoning that "to the extent that testimony regarding the events shown on the surveillance video provided context or additional information that could be helpful to the jury, was permitted to comment on the video).

{¶57} Accordingly, we cannot conclude that the trial court abused its discretion by admitting the testimonies of Det. Stone, Righter, and Carver. Moreover, we cannot conclude that there is any error that rises to level of plain error as to the testimonies of Czarnecki and Holton which caused a manifest miscarriage of justice under the facts before us.

{¶58} Lester's second and third assignments of error are overruled.

*State v. Lester, supra.*

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Before a habeas petitioner can obtain review of a federal constitutional claim, he must have fairly presented that claim to the state courts.  If he has failed to do so, the claim is procedurally

defaulted. Conversely, a habeas court cannot review the state courts' rulings on questions of state law. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Finally, not every state procedural rule is enforceable under the Due Process Clause. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

The Third District's decision on Assignments of Error Two and Three do not evince any understanding that the court is deciding federal constitutional questions. Nor does Lester purport to raise any such questions on direct appeal – the wording of the Second and Third Assignments of Error do not refer to any specific constitutional rights – the language "substantial constitutional rights" is insufficient.

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by

*Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk,* 871 F.3d 390, 418 (6th Cir. 2017). The only federal cases cited by Lester on appeal are *Berger v. U.S.,* 295 U.S. 78 (1935), a prosecutorial misconduct case, and *Strickland.* There is no hint of a Confrontation Clause claim or a claim that failure to comply with the notice of other bad acts portion of Ohio R. Evid. 404 violates the Due Process Clause.

Ground Two is procedurally defaulted by Lester's failure to fairly present it to the state courts as a federal constitutional claim. It should be dismissed with prejudice on that basis.

**Ground Three: Prosecutorial Misconduct**

In his Third Ground for Relief, Lester claims he was denied a fair trial by the pervasive misconduct of the prosecutor including introducing the evidence complained of in Ground Two, eliciting a "wide array of improper testimony," making improper comments on credibility, and threatening and improperly impeaching a witness.

Lester pleaded prosecutorial misconduct as his Fourth Assignment of Error and the Third District decided it as follows:

> {¶69} In his fourth assignment of error, Lester asserts that during trial and during closing arguments that the prosecutor engaged in prosecutorial misconduct denying him a fair trial.

*Standard of Review*

{¶70} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), (citation omitted). " 'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal." ' " *Id.*, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶ 20, quoting *Landrum*, 53 Ohio St.3d at 112. "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995), (citations omitted).

*Analysis*

{¶71} In his argument, Lester asserts that the State improperly impeached its own witnesses through impermissible-character attacks. However, since we have determined in Lester's third assignment of error that the testimonies of the witnesses were not impermissible-character attacks, but rather narrations of States Exhibit 65 offered to lay a foundation, assist with authentication, create a timeline, and provide context for the exhibit for the jury, we reject this argument.

{¶72} We now turn to Lester's argument that Heather Carpenter ("Carpenter") was harassed and threatened by the State which inflamed the jury and resulted in misconduct. Importantly, Lester objected to the admission of Carpenter's testimony on the basis of relevancy and argued that the presence of Carpenter's son in the surveillance video (State's Exhibit 65) would inflame the jury. (Oct. 31, 2018 Tr., Vol. II, at 236-237). Nevertheless, the trial court overruled the objection and permitted Carpenter's testimony as to Counts One, Two, and Eight of the Raymond-residence case. Thereafter, the State questioned Carpenter attempting to get her to admit that she purchased drugs from Lester or sold drugs for Lester when she was absent from the room where she left her son. (*Id.* at 234-243); (*See* State's Ex. 65). When testifying, Carpenter was uncooperative and evasive, and subsequently attempted to assert her Fifth-Amendment privilege which resulted in Lester's trial counsel's

objecting for a second time followed by a request for the trial court to appoint Carpenter counsel after asserting her Fifth Amendment privilege. (Oct. 31, 2018 Tr., Vol. II, at 243, 245-247). Thereafter, the trial court instructed the jury under Crim.R. 5(A)(2) and (3) as to the inferences to be drawn from Carpenter's refusal to testify and Carpenter was immediately excused with no further examination by the State or Lester. (*Id.* at 247-251). *Compare State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 39, citing *State v. Dinsio*, 176 Ohio St. 460, 468 (1964), (concluding "the key in *Dinsio* was the fact that the prosecutor, after the witness claimed the privilege, used the witness's prior statement to ask him a series of questions in what amounted to an effort to force the witness to repeatedly assert his right in the presence of a jury and to allow the jury to hear 'innuendo evidence or inferences of evidence' that the state could not get from the witness directly.").

{¶73} Under the presented facts, it is not prosecutorial misconduct for the State to call a witness, who may claim a Fifth-Amendment privilege, by asking that witness questions. *Dinsio* at 466, citing *Commonwealth v. Granito*, 326 Mass. 494, 499, 95 N.E.2d 539 (Mass. 1950), ("The possibility that a witness may claim the privilege does not prohibit the prosecutor from asking questions."). Moreover, Lester cannot establish prejudice here because the trial court gave the jury a curative instruction which was sufficient to relieve any prejudice Lester may have suffered. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 170, citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994), *overruled on other grounds*, ("The trial court's curative instruction was sufficient to relieve any prejudice."). Consequently, Lester has failed to establish the second prong of the prosecutorial-misconduct test.

{¶74} Next, Lester asserts that the State committed misconduct when it vouched and bolstered the credibility of witnesses and by making improper comments (regarding Lester's guilt) during closing argument. Addressing prosecutorial misconduct allegations related to closing arguments, "[p]arties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.' " *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-7085, at ¶ 13, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶ 213. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159, ("A prosecutor may state an opinion if based on evidence presented at trial."). " 'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429, ¶ 13,

quoting *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 10, citing *State v. Smith*, 14 Ohio St.3d at 14. " 'A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning.' " *Id.*, quoting *Encarnacion* at ¶ 10, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974). " 'Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred.' " *Id.*, quoting *Encarnacion* at ¶ 10, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

{¶75} Initially, we note that Lester did not object to any of the prosecutor's statements made during closing argument, and therefore we apply plain error. *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 30, citing *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 85, citing *State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63 and Crim.R. 52(B), ("If defense counsel did not object at trial to the allegedly prejudicial remarks, then all but plain error is waived."). " 'A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice.' " *Id.*, quoting *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 55, quoting *Smith*, 2015-Ohio-2977, at ¶ 63. An appellate court " 'may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct.' " *Id.*, quoting *Smith*, 2015-Ohio-2977, at ¶ 63, citing *Williams*, 79 Ohio St.3d at 12.

{¶76} Here, Lester's argument raises issue with several comments made by the State during its closing argument which he argues were attempts to garner sympathy for the witnesses. (*See* Nov. 2, 2018 Tr. at 18). " 'We evaluate the allegedly improper statements in the context of the entire trial.' " *Stevens* at ¶ 72, quoting *State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-1887, ¶ 82, citing *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). Lester's first allegation is that the prosecutor garnered sympathy for several witnesses by calling them "addicts". Regarding his allegation, taken in context, the prosecutor was summarizing those witnesses' testimonies regarding their admitted drug abuse when characterizing those witnesses as "addicts" which was permissible and based on the evidence presented during trial. *Id.*, (concluding that after taking the statements in context the prosecutor was summarizing the testimony of the witness). The prosecutor's statements were not improper. Therefore, we reject Lester's first allegation as meritless.

27

{¶77} Then, Lester argues that the prosecutor's statements regarding the prosecutor's familiarity with "12 step program[s]" when summarizing Maynard's testimony and his reference to Holton's testimony as "fabulous" and "honest" were examples of improper vouching or bolstering. (Nov. 2, 2018 Tr. at 33, 35). "An attorney may not express a personal belief or opinion as to the credibility of a witness." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232, citing *Williams*, 79 Ohio St.3d at 12. Improper "vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Id.*, citing *State v. Jackson*, 107 Ohio St. 3d 53, 2005-Ohio-5981, ¶ 117. Upon review, we conclude that the prosecutor did not improperly vouch for or bolster Maynard and Holton's credibility. That is—the prosecutor did not state that he personally believed Maynard or Holton, nor did he place his (the prosecutor's) credibility at issue. Instead, he merely argued that certain facts, presented during the trial, demonstrated that various witnesses were credible witnesses. *State v. Green*, 90 Ohio St.3d 352, 374 (2000), (concluding that the prosecutor properly argued facts to support witness's credibility and that he did not improperly vouch for her).

{¶78} Next, Lester argues that the prosecutor improperly appealed to the jury's sense of fairness during his rebuttal argument with the following statement:

> [State of Ohio]: The State of Ohio, as represented as best I very much could, ask that you return guilty verdicts against Jerod Lester for each of these 12 counts in the two different cases. Why? *Just like we held those other people accountable who testified against him, we must hold Jerod Paul Lester accountable.* Thank you.

(Emphasis added.) (Nov. 2, 2018 Tr. at 67). The prosecutor's statement is not appealing to the jury's sense of fairness, but rather the prosecutor is offering a summary of the testimony that the jury heard regarding one of the witnesses who was convicted as a result of his involvement in Lester's-criminal enterprise. (*See* Oct. 30, 2018 Tr., Vol. I, at 83). *See also State v. Klapka*, 11th Dist. Lake No. 2003-L-044, 2004-Ohio-2921, ¶ 44, citing *Frazier v. Cupp*, 394 U.S. 731, 735 (1969).

{¶79} In our review of the record we cannot conclude that the statements of the prosecutor made during closing argument resulted in a miscarriage of justice.

{¶80} Lastly, Lester argues that the cumulative effect of prosecutorial misconduct deprived him of a fair trial. Because we have determined that no prosecutorial misconduct occurred based on the facts before us, there is no basis for cumulative error. *State v. Carter*, 2017-Ohio-1233, at ¶ 136, (concluding that because Carter's claims did not rise to the level of prosecutorial misconduct that there is no basis for cumulative error). Accordingly, Lester's fourth assignment of error is overruled.

*State v. Lester, supra.*

The Third District thus decided this claim on the merits and its decision is entitled to deference unless Lester can show it is contrary to or any objectively unreasonable application of clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).

In *Serra v. Michigan Dept of Corrections*, 4 F.3d 1348 (6th Cir. 1993), the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct claims:

In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.* at 1355-56, *quoting Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982)(citation omitted). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.), *cert. denied*, 522 U.S. 1001 (1997)(citation omitted); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).  Claims of prosecutorial misconduct are reviewed deferentially on habeas review.  *Thompkins v. Berghuis,* 547 F.3d 572 (6th Cir. 2008), rev'd on other grounds, *560 U.S. 370* (2010), *citing Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied,* 544 U.S. 921 (2005).

In *Parker v. Matthews*, 567 U.S. 37 (2012)(per curiam), the Supreme Court summarily reversed the Sixth Circuit, *Matthews v. Parker*, 651 F.3d 489 (6th Cir. 2011), noting that the "*Darden* standard is a very general one, leaving [state] courts 'more leeway . . . in reaching

outcomes in case-by-case determinations.'" *Matthews* at *18, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), and criticizing the Sixth Circuit's reliance on its much more detailed standard in *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006).

Lester does not cite any conduct of the prosecutor which he then compares with holdings of the Supreme Court that such conduct is improper. Thus he has not shown that the Third District's decision is an unreasonable application of the holding of a relevant Supreme Court precedent. Absent such a showing, the Third District's decision on prosecutorial misconduct is entitled to deference. On that basis, Ground Three should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 17, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond

to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge